**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re: ) | |
| ) | |
| J & M DEVELOPMENT OF CASS ) | Case No. 04-41065-JWV |
| COUNTY, INC. ) | |
| ) | |
| Debtor. ) | |

### MEMORANDUM OPINION

J & M Development of Cass County, Inc. ("Debtor") filed an application to employ Charles E. Weedman, Jr. ("Weedman") of Crouch, Spangler & Douglas as the Debtor's attorney in this Chapter 11 case. The United States Trustee and the Bank of Belton objected to the Debtor's application pursuant to 11 U.S.C. § 327(a) on the grounds that Weedman represents other parties whose interests are materially adverse to the bankruptcy estate and that Weedman does not meet the disinterestedness requirements of the statute.

The Court held a hearing in this matter on May 11, 2004, in Kansas City, Missouri, at which time the Court took the matter under advisement. Based on the arguments of the parties and the relevant case law, the Court will deny the Debtor's application to employ Weedman as its bankruptcy attorney.

### I. BACKGROUND

From the pleadings and the arguments of counsel, as well as from a reading of the state court judgment referenced herein, we can glean the following factual background:

Janie Bogar is the president and sole shareholder of the Debtor. Her husband, Michael Bogar ("Michael"), previously operated and controlled Bogar Farms, Inc. ("Bogar Farms"), a corporation that is no longer doing business and reportedly has no assets. Furthermore, Michael personally has no meaningful assets, regularly appears on child support deficiency motions related to a previous marriage, and is essentially judgment proof.

When Bogar Farms was operating, it borrowed $297,300.33 from the Bank of Belton. Michael co-signed the promissory note. At the request of the Bank of Belton, the Debtor pledged some of its property – apparently without consideration – as additional collateral to secure the loan. After Bogar

Farms defaulted on the note, the Bank of Belton seized the Debtor's pledged collateral, having an approximate value of $51,000.00, and sued Michael and Bogar Farms in state court. Weedman represented both Michael and Bogar Farms in the state court litigation. The Bank of Belton also sued the Debtor, alleging that the Debtor was liable on the promissory note under a veil-piercing theory, on the grounds that Michael controlled the Debtor during the relevant time periods. Michael and Bogar Farms agreed to the entry of a consent judgment in favor of the Bank of Belton. Lynn K. Ballew represented the Debtor and contested, unsuccessfully, the Bank of Belton's veil-piercing theory.[1] The trial court's final order allowed the Bank of Belton to execute on the Debtor's assets to satisfy the judgment against Michael and Bogar Farms.

In due course, the Bank of Belton executed on the assets of Bogar Farms. After the sale of Bogar Farms's assets, the Bank of Belton still held an outstanding debt consisting of a crop note in the amount of $179,821.18 and accrued attorney's fees of $78,902.00. With additional interest and costs, the Bank of Belton's outstanding judgment against Michael and Bogar Farms was $280,142.00 as of October 17, 2003. When the Bank of Belton attempted to foreclose on the Debtor's property, the Debtor filed this Chapter 11 petition on February 26, 2004.

The Debtor now seeks to employ Weedman as its attorney despite the fact that Weedman represented Michael and Bogar Farms in the state court litigation, despite the fact that the Debtor has a potential $51,000.00 claim against Michael and Bogar Farms, and despite the fact that the Debtor may have eventual contribution claims against both Michael and Bogar Farms if the state court judgment is upheld on appeal. Counsel represented that Michael, Bogar Farms, and the Debtor have waived any conflict of interest arising out of Weedman's employment.

## II. DISCUSSION

Both the United States Trustee and the Bank of Belton object to Weedman's employment as the Debtor's counsel because Weedman may be called upon to sue both Michael and Bogar Farms to recover money on behalf of the Debtor and its creditors on the same issues upon which he earlier defended those parties. Weedman counters that the only conflict is one that exists in theory – not in reality – because Bogar Farms allegedly has no assets to satisfy the Bank of Belton's claims, much

---

[1] In a companion motion, the Debtor requested that Lynn K. Ballew be authorized to continue to represent the Debtor on the appeal of the state court judgment. That motion was granted by the Court. (Document No. 24)

less the Debtor's claims, and that Michael is essentially judgment proof. If there are no assets to pursue, Weedman argues, any contemplated suit against either Michael or Bogar Farms would be futile and thus there is no true conflict.

A Chapter 11 debtor in possession acts in a fiduciary capacity to creditors of the estate; thus, a debtor in possession has an obligation not to act in a manner that could damage the estate or hinder a successful reorganization. *In re Flight Transportation Corp. Sec. Litigation*, 874 F.2d 576, 581 (8th Cir. 1989). *See also In re Marvel Entertainment Group*, 140 F.3d 463, 471 (3rd Cir. 1998) (same). That fiduciary obligation extends to the selection of counsel to represent the debtor in possession. Apart from the debtor in possession's fiduciary duty not to damage the estate or hinder a successful reorganization, the Bankruptcy Code provides separate standards for approving a debtor's application to approve an attorney's employment:

> [The Chapter 11 debtor in possession], with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out the [debtor in possession's] duties under this title.

11 U.S.C. § 327(a).

Section 327 must be strictly construed "in order to maintain the integrity of the bankruptcy process." *Sturgeon State Bank v. Perkey (In re Perkey)*, 194 B.R. 846, 851 (Bankr. W.D. Mo. 1996) (quoting *Temp-Way Corp. v. Continental Bank (In re Temp-Way Corp.)*, 95 B.R. 343, 346 (E.D. Pa. 1989), *aff'd*, 981 F.2d 1248 (3rd Cir. 1992)). The standard is two-part; the person sought to be employed must not hold or represent an interest adverse to the estate, and that person must be disinterested. S. Rep. No. 989, 95th Cong., 2d Sess, 38 (1978). *See also Pierce v. Aetna Life Insurance Company (In re Pierce)*, 809 F.2d 1356, 1362 (8th Cir. 1987) ("Although framed conjunctively, the conditions are applied disjunctively; failure to meet either will result in disqualification."). A person has an interest adverse to the estate when active competition exists between two interests, in which one interest can only be served at the expense of the other. *In re Am. Energy Trading, Inc.*, 291 B.R. 154, 157 (Bankr. W.D. Mo. 2003). *See also* Mo. S. Ct. Rule 4-1.7(b) (stating that "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client" and commenting that "a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated."). The Bankruptcy Code defines a "disinterested person" as one not having

"an interest materially adverse to the interest of the estate ... for any ... reason." 11 U.S.C. § 101(14)(E).

In this matter, if Weedman's employment application were approved, Weedman would apparently be representing Michael and Bogar Farms as well as the Debtor. Weedman did not advise the Court that he has ceased representing those two parties. Thus, Weedman would be representing parties whose interests are adverse to that of the estate. Indeed, Weedman would have a fiduciary duty on behalf of the Debtor, as debtor in possession in this Chapter 11 case, to seek possible recoveries or contribution from the very clients he represents. Under these circumstances, Weedman would not and could not be disinterested, as required by § 327(a).

The Debtor's arguments that no practicable conflict of interest exists on the basis that neither Michael nor Bogar Farms has any assets, and that the parties have waived any potential conflict, is insufficient to cure the enervation of Weedman's employment application. Quite simply, the fact that neither Michael nor Bogar Farms currently has any assets does not mean that they are bound to be destitute forever. For example, Michael could inherit substantial money or real property, win the lottery, or start a lucrative new business. More importantly, the Debtor has obligations to the bankruptcy estate that are larger than itself, and, in this case, it is inappropriate for the Debtor to waive the ethical conflict of interest in Weedman's multiple representation, especially considering the objections of the United States Trustee and the Bank of Belton.

Furthermore, pursuant to the stipulated facts underlying the state court judgment in *Bank of Belton v. Bogar Farms*, No. CV100-635CC (Mo. Cir. Ct. Nov. 27, 2002), Michael dominated and controlled the Debtor, he caused $55,531.19 to be transferred to the Debtor for its benefit, and he received $66,719.78 from the Debtor by way of payments the Debtor made to the Bank of Belton on Michael and Bogar Farms's behalf. Weedman, as the representative of Michael and Bogar Farms, cannot be the individual to make an objective and unbiased determination on such issues as whether the Debtor made transfers to Michael and Bogar Farms in exchange for less than reasonable equivalent value under 11 U.S.C. § 548. Additionally, the existing $51,000.00 claim against Michael and Bogar Farms listed in the Debtor's schedules and the Debtor's potential claims for contribution against Michael and Bogar Farms convince the Court that active competition exists among the Debtor, Michael, and Bogar Farms such that Weedman can only serve the interest of the Debtor at the expense

of his other two clients or, conversely, that Weedman can only serve the interests of his other two clients at the expense of the Debtor. Neither of these alternatives is acceptable.

Although it may be more expensive for the Debtor in the short term to employ other counsel, the Court believes that disqualifying Weedman at this early stage in the case will avoid problems and unnecessary delays and expense further down the road. Even if the conflict between the Debtor, on the one hand, and Michael and Bogar Farms, on the other hand, is only potential, it is possible that just the prospect of future competition between their interests will exert a subtle influence over Weedman's handling of this case.[2] The Court believes it would be difficult to convince the Debtor's creditors that Weedman could act objectively under these circumstances. Moreover, if the potential conflict should become an actual conflict, the Court would then be faced with the difficulty and delay that necessarily follow when a professional is disqualified in the middle of a case. These problems can be avoided if a professional without any potential conflict of interest is employed by the Debtor from the outset. *See e.g.*, *In re BH & P, Inc.,* 103 B.R. 556 (Bankr. N.J. 1989) (disqualifying a trustee and a retained law firm, hired by the trustee to represent three jointly administered estates of a corporate debtor and two of its principals, based, in part, on the inability of the trustee and law firm to represent both creditor and debtor estates after the law firm caused proofs of claim to be filed by one estate against another), *aff'd*, 119 B.R. 35 (3rd Cir. 1991).

### III. CONCLUSION

In sum, the Court finds that the Debtor's application to employ Weedman as its bankruptcy attorney is not consonant with the Debtor's larger duties to the bankruptcy estate, and considering the Debtor's obligations to the estate, the inherent difficulty in waiving any conflict of multiple representation under Mo. S. Ct. Rule 1.7 is a factor weighted toward denying Weedman's application. Likewise, under the language of 11 U.S.C. § 327(a), the Debtor's application to employ Weedman must be denied because Weedman would otherwise be representing parties whose interests are materially adverse to – and competitive with – the interests of the bankruptcy estate. He cannot be disinterested under these circumstances.

---

[2] We do not in any way mean to impugn Weedman's integrity or character. We have no questions about either of those. We are speaking here of human nature, nothing more.

In fairness to Weedman, the Court will permit him to file a fee application for the work he has done thus far to advance this case, though it will not award him fees for preparing and arguing his application to be employed as the Debtor's attorney.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 19th day of May 2004.

                                                                                        /s/   Jerry W. Venters
                                                                                     United States Bankruptcy Judge

A copy of the foregoing mailed electronically or
conventionally to:
Lynn K. Ballew
Charles E. Weedman
Sherri L. Wattenbarger
Lisa A. Epps