**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re: | ) |
| | ) |
| J & M DEVELOPMENT OF CASS COUNTY, INC. | ) Case No. 04-41065-JWV |
| | ) |
| | ) |
| Debtor. | ) |

**MEMORANDUM OPINION**

This matter now before the Court in this Chapter 11 case is the motion of the Debtor, J&M Development of Cass County, Inc. ("Debtor"), to vacate a previous Order granting the Bank of Belton ("Bank") relief from the automatic stay to execute a state court judgment against a parcel of undeveloped land that is the Debtor's only significant asset.

In its motion, the Debtor argued that it was unable to file a timely response to the Bank's motion for relief from stay because it was between attorneys.[1] The Debtor also asserted that the Bank was attempting to execute on a non-final judgment; that the Debtor would suffer irreparable harm by the Bank's foreclosure on its only significant asset; and that no prejudice would result in granting the Debtor's new counsel an additional thirty days to work with the Debtor to file a Chapter 11 plan. After receiving the Bank's response to its motion, the Debtor further asserted that the Bank's judgment was not secured by a lien against the real property on grounds that the Bank had failed to comply with Missouri's levy laws and that there is no judgment lien against the Debtor for any specific amount of money.

After considering the evidence, the parties' arguments, and the relevant case law, the Court will deny the Debtor's motion.

**I. STANDARD OF REVIEW**

Two provisions exist in the Federal Rules of Bankruptcy Procedure for a court to vacate a prior judgment. First, under Fed. R. Civ. P. 59, as adopted by Fed. R. Bankr. P. 9023, within ten days

---

[1] The Court had disqualified the Debtor's first attorney on May 19, 2004, due to an impermissible conflict of interest. Present counsel made his first appearance in the case on behalf of the Debtor when he filed the pending motion to vacate on June 24, 2004. An Application to employ present counsel was not filed until July 6, 2004.

of entry of judgment a party may move to amend that judgment or to seek a new trial. Regarding a party's entitlement to a new trial, the Rule states:

> A new trial may be granted to all or any of the parties and on all or part of the issues ... (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Fed. R. Bankr. P. 9023(a).

A new trial may be granted if the judgment reached by a court is against the weight of the evidence or if the first trial results in a miscarriage of justice. *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992). "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence – it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain a verdict.'" *Ryan v. McDonough Power Equipment*, 734 F.2d 385, 387 (8th Cir. 1984) (citation omitted).

Second, a court may grant a party relief from a final judgment pursuant to Fed. R. Civ. P. 60, as adopted by Fed. R. Bankr. P. 9024. Under Rule 60, a party may be entitled to relief from a final judgment for the following reasons, among others:

> (1) ... excusable neglect ... (4) the judgment is void; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

A court has broad discretion in ruling on a Rule 60(b) motion. *MIF Realty L.P. v. Rochester Associates*, 92 F.3d 752, 755 (8th Cir. 1996). A Rule 60(b) motion is given a liberal construction so as to prevent injustice, *id*., but the moving party also bears a heavy burden because Rule 60 provides extraordinary relief and the act of overturning otherwise final judgments is viewed with disfavor. *Bowman v. Bond (In re Bowman)*, 253 B.R. 233, 240 (B.A.P 8th Cir. 2000).

## II. BACKGROUND

The genesis of the Bank's motion to seek relief from the automatic stay to foreclose on the Debtor's property arises out of a dispute between the Bank and Michael Bogar, the husband of Janie Bogar, who is the sole shareholder and president of the Debtor. Michael Bogar previously operated and controlled Bogar Farms, Inc. ("Bogar Farms"), a defunct entity that has no assets. When Bogar

2

Farms was operating, it borrowed $297,300.33 from the Bank, and the Debtor pledged some of its property as collateral for that loan. Bogar Farms subsequently defaulted on the note, and the Bank sued Michael Bogar and Bogar Farms in state court. The Bank also sued the Debtor – not only to seize the Debtor's property that served as collateral for the Bogar Farms loan, but also to establish that the Debtor was fully liable on the Bogar Farms promissory note under a veil-piercing theory on the grounds that Michael Bogar controlled the Debtor during the pertinent time periods. Michael Bogar and Bogar Farms agreed to the entry of a consent judgment in favor of the Bank, but the Debtor chose to litigate the Bank's lawsuit against it.

On August 13, 2003, the state court entered its judgment, which held that the Bank was entitled to pierce the corporate veil of the Debtor and which authorized the Bank to levy and execute on the Debtor's assets to satisfy the judgment against Michael Bogar and Bogar Farms. The Debtor timely filed an appeal, but chose not to post a supersedeas bond. On October 21, 2003, pursuant to the judgment of the state court, the Sheriff of Cass County, Missouri, filed a notice of levy on the Debtor's real property. On January 28, 2004, the Sheriff filed a notice of a sheriff's sale, which was set for March 2, 2004. The Debtor filed its voluntary petition for relief under Chapter 11 of the bankruptcy code on February 26, 2004, which stayed the pending sale.

The Debtor's initial bankruptcy counsel, Charles Weedman, was also the lawyer for Michael Bogar and Bogar Farms in the underlying state court litigation – entities against whom the Debtor had potential claims. On May 19, 2004, the Court disqualified Weedman as the Debtor's attorney, and only eight days later, on May 27, 2004, the Bank moved to lift the automatic stay of 11 U.S.C. § 362 to foreclose on the Debtor's property pursuant to the judgment of the state court. The Debtor attempted to find new bankruptcy counsel, and after several attempts the Debtor hired its present counsel on June 22, 2004. Meanwhile, the Debtor, acting *pro se,* resolved itself to contest the Bank's motion at the scheduled June 22, 2004 hearing. Unfortunately, the Debtor failed to timely respond to the Bank's motion for relief from stay and the Court granted relief to the Bank on June 18, 2004. Six days later, on June 24, 2004, the Debtor's counsel filed the instant motion to vacate that Order.

## II. DISCUSSION

The Debtor asserts several equitable and legal grounds for vacating the Court's Order granting the Bank relief from the automatic stay. In fairness, the Debtor argues, it should not be bound by the

3

Court's Order because it was entered after the Court disqualified the Debtor's original counsel and before it had sufficient time to engage new counsel – a time when the Debtor was effectively left without a voice because a corporation in bankruptcy cannot represent itself *pro se.*[2] The Debtor also asserts that no prejudice would result to any party if the Court vacated its Order and allowed an additional thirty days for the Debtor's counsel to devise a Chapter 11 plan, and that the failure of the Court to vacate the Order would cause irreparable injury to the Debtor. From a legal perspective, the Debtor argues that the Court should vacate its judgment on the basis that the underlying state court judgment is not final, it is not secured by a lien against the Debtor's real property, and there is no judgment lien against the Debtor.

When the Court granted the Bank's motion seeking relief from the automatic stay, it did so under the authority of 11 U.S.C. § 362(d)(3), which provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay –
>
> ....
>
> (3) with respect to a stay of an act against single asset real estate ... by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) –
>
>> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time ....

11 U.S.C. § 362(d)(3).

Accordingly, to be entitled to relief under this section, the Bank had the burden to show that it had a secured claim in real estate and that ninety days had passed from the Debtor's petition date without the Debtor filing a plan of reorganization. § 362(d)(3).

The Debtor did not respond to the Bank's motion, and the Debtor did not file a plan of reorganization – or request an extension to file one – within ninety days of filing its petition. The Bank also presented evidence that it had a judgment lien against the Debtor's property. Thus, this Court granted the Bank's motion to terminate the automatic stay so that it could proceed to foreclosure on

---

[2] Fed. R. Bankr. P. 9010, 1983 Advisory Committee Note (stating that the rule regarding representatives "does not purport to change prior holdings prohibiting a corporation from appearing pro se.") (citing *Schreibman v. Heller & Co. of Puerto Rico (In re Las Colinas Development Corp.)*, 585 F.2d 7 (1st Cir. 1978)).

its judgment lien. As stated herein, under the standards of Fed R. Bankr. P. 9023 and 9024, the Court does not find that entry of its Order is contrary to the weight of the evidence, or that a legal or equitable basis exists to vacate that Order on the grounds asserted by the Debtor.

**A. Final Judgment**

The Debtor asserts that granting the Bank relief from the automatic stay was improper because the judgment of the state court was not a final order. This argument is without merit.

The Bank sued Michael Bogar, Bogar Farms, and the Debtor in state court. The state court entered its judgment allowing the Bank to seize and sell the Debtor's real property and the Debtor appealed from that order. After entry of that judgment, there was nothing left for the state court to do but to execute the judgment and that judgment was final. *State ex rel. Angle v. Hull*, 930 S.W.2d 25, 27 (Mo. Ct. App. 1996) (stating that a final judgment is one that disposes of all parties and issues in a case, leaving nothing for future determination.) Under Missouri law, final judgments obtained in the circuit courts can be executed on by a party unless the judgment debtor stays the execution of that judgment on appeal by filing a supersedeas bond. Mo. S.Ct. Rule 81.09(a).

In this case, the Debtor timely appealed the judgment of the state court, but the Debtor did not post a supersedeas bond. Thus, the Bank is entitled to execute on the judgment of the state court notwithstanding the Debtor's appeal of that order.[3] Accordingly no basis exists under 11 U.S.C. § 362(d)(3) to defeat the Bank's entitlement to relief from the automatic stay on the basis that the state court's judgment allowing the Bank to foreclose on the Debtor's property was not final.[4]

---

[3] The Court notes the inconsistency of the Debtor's arguments in that it appealed the order of the state court because that order was final, yet the Debtor argues here that the same order was not final.

[4] The Court also notes that no basis exists to overturn this Court's Order granting the Bank relief from the automatic stay to foreclose on the Debtor's real property under Fed. R. Civ. P. 60(b)(4) on the grounds that the judgment of this Court is void. A void judgment is one rendered when the Court has no jurisdiction or a judgment is rendered in violation of a party's due process rights. *Chambers v. Armontrout*, 16 F.3d 257, 260 (8th Cir. 1994) (holding that the district court's judgment – even if erroneous – was not void when the court had jurisdiction over the subject matter and the parties and when the court preserved the party's due process rights); *Kocher v. Dow Chemical Co.*, 132 F.3d 1225, 1230 (8th Cir. 1997) (stating that a Rule 60(b)(4) motion "can succeed only if the absence of jurisdiction was so glaring as to constitute a 'total want of jurisdiction' or a 'plain usurpation of power' so as to render the judgment void from its inception."). *See also Hoult v. Hoult*, 57 F.3d 1, 5 (1st Cir. 1995) ("A judgment is not void simply

**B. Judgment Lien Against the Debtor and the Debtor's Property**

The Debtor asserts that the Bank was not entitled to relief from the automatic stay because it did not have a valid judgment lien under Missouri law inasmuch as the judgment was not properly recorded and because the judgment was rendered against Michael Bogar and Bogar Farms – not the Debtor.

In Missouri, judgment liens are effective on the day of the rendition of a judgment and continue in effect for ten years. Mo. Rev. Stat. § 511.360; Mo. S.Ct. Rule 74.08. If a money judgment does not state the amount awarded, then the sum must be easily ascertainable from the record to be enforceable. *American Western Bonding Co., Inc. v. United Surety Agents, Inc.*, 134 S.W.3d 700, 704 (Mo. Ct. App. 2004). With regard to judgment liens, Missouri law provides:

> Judgments and decrees entered by the supreme court, by any United States district or circuit court held within this state, by any district of the court of appeals, by any circuit court and any probate division of the circuit court, except judgments and decrees rendered by associate, small claims and municipal divisions of the circuit courts, shall be liens on the real estate of the person against whom they are entered, situate in the county for which or in which the court is held.

Mo. Rev. Stat. § 511.350.1.

Judgment liens are effective on the date of the judgment against the judgment debtor's real property located in the county where the court is located. Mo. Rev. Stat. § 511.360; Mo. S.Ct. Rule 74.08.

In this case, the Debtor was a named defendant in the Bank's state court lawsuit, and the state court judgment – right or wrong – specifically stated that it was against the Debtor when the Court ruled that "the assets of J&M Development be subject to levy and execution for the judgment indebtedness of Michael Bogar and Bogar Farms, Inc. to Bank of Belton." As between the Bank and the Debtor, there is no other process necessary to effectuate the Bank's judgment lien under the plain

---

because it is or may have been erroneous; it is void only if, from its inception, it was a legal nullity.").

In this case, no dispute exists regarding this Court's jurisdiction over the parties or its power to grant a party relief from the automatic stay – a core matter. 28 U.S.C. § 157(b)(2)(G). Regarding the Debtor's due process rights, the Debtor had twenty-nine days after the Court disqualified its original bankruptcy counsel to find a new attorney before a response was due to the Bank's motion for relief from stay. The Debtor's due process rights were adequately preserved, and no basis exists for vacating the Court's Order on the grounds that it was void under Fed. R. Civ. P. 60(b)(4).

language of Mo. Rev. Stat. § 511.350.1; the Bank's judgment lien is effective in Cass County, where it was rendered and where the Debtor's real property is located.[5]

## C. Adequate Time to Respond

The Debtor asserts that it did not have adequate time to find a new attorney and that it will suffer irreparable harm in the event the Bank is allowed to foreclose on its real property – the Debtor's only significant asset. The Debtor further asserts that no harm would result to any party in allowing the Debtor an additional thirty days to file a Chapter 11 plan. The Court will consider each argument in turn.

### 1. Irreparable Harm and Time to File a Chapter 11 Plan

The Debtor asserts that it would suffer irreparable harm in the event the Bank is allowed to foreclose on its only significant asset. Two problems exist with the Debtor's contentions and proscribe the relief it seeks.

First, the "irreparable harm" the Debtor asserts is the Bank's foreclosure on its real property. The state court granted the Bank the right to foreclose on the Debtor's property and the merits of that decision are pending on appeal; the underlying merits of that decision will not, and cannot, be addressed in this forum. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S. Ct. 149, 68 L. Ed. 362 (1923) (holding that lower federal courts lack jurisdiction to review final state court decisions). If the Debtor seeks to stay the execution of the state court judgment, then it should seek to post a supersedeas bond while its case is on appeal.

Second, the Debtor's assertions that it should be allowed time to file a Chapter 11 plan – knowing that the filing of a plan that relies on the use of the Debtor's real property is a defense to a motion for relief from stay under § 362(d)(3) of the Bankruptcy Code – is undermined by the plain language of the statute. Section 362(d)(3) specifically provides that relief from the stay in a single

---

[5] The Debtor argues that the Bank, pursuant to Mo. Rev. Stat. § 513.085, cannot execute on the judgment of the state court until the officer making the levy files a notice of that levy with the recorder of deeds in the city or county in which the real estate is situated. The Debtor confuses the existence of a judgment lien with the procedures for executing that lien. All this Court ordered is that the Bank was free to execute on the judgment of the state court without violating the automatic stay. Even if the Debtor's argument is meritorious, whether the Bank complied with § 513.085 has no bearing on whether the Court's Order granting the Bank relief from the automatic stay was valid. Section 513.085 simply is not applicable to the establishment of the Bank's judgment lien; the state court is the proper forum for determining the validity of an execution of judgment.

asset real estate case *shall* be granted "unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90 day period) – (A) the debtor has filed a plan of reorganization ...." Because the Debtor did not file a plan within the first ninety days of its bankruptcy case and did not request any extensions of time, the Debtor is not entitled to a defense or claim for relief under the language of that statute.

### 2. Excusable Neglect

Under Fed. R. Bankr. P. 9024, which adopts Fed. R. Civ. P. 60, the court may relieve a party or a party's legal representative from a final judgment in cases of excusable neglect. Fed. R. Civ. P. 60(b)(1). The term "excusable neglect" applies when the a party fails to comply with deadlines for filing documents. *Pioneer Investment Services v. Brunswick Association. Ltd. Partnership*, 507 U.S. 380, 394, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)). In determining whether a party's neglect is excusable, a court should consider all the relevant circumstances. *Id.* "Factors to consider include (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Id.* When the defaulting party only made a minor mistake, other equitable considerations should be given significant weight in determining whether relief under Rule 60(b)(1) should be granted. *Union Pacific Railroad Co. v. Progress Rail Services Corp.*, 256 F.3d 781, 782 (8th Cir. 2001).

In this case– although it is admittedly a close question – the Court finds that the Debtor had a reasonable amount of time to find a new attorney to timely file a response to the Bank's motion for relief from stay. The Debtor was aware of the possibility that its original counsel would be disqualified as early as April 14, 2004, when the United States Trustee objected to Weedman's representation of the Debtor (Document No. 16). The Court disqualified the Debtor's first attorney on May 19, 2004, and the Bank filed its motion for relief from stay on May 27, 2004. The Debtor had until June 17, 2004 to file a response to that motion. Thus, the Debtor was or should have been aware of the possibility that its attorney might be disqualified more than a month before that disqualification occurred, and even after the Court disqualified the Debtor's first attorney, the Debtor had an additional twenty-nine days in which to find a new attorney and file an objection to the Bank's motion for relief from stay. The Debtor could hardly have been surprised by the filing of the motion for relief, given the history of litigation between the Bank and the Debtor and the Bogars, the Bank's previous attempts

-8-

to execute on the property, and the pending appeal in the Missouri Court of Appeals. The Debtor chose to file this Chapter 11 proceeding in a transparent attempt to shield its property from the Bank, rather than post a supersedeas bond in the Court of Appeals, and its failure to act more diligently in this case is difficult to comprehend. The ability to timely respond was completely in the Debtor's control. Furthermore, the Debtor has not shown any reasonable substantive basis for denying the Bank relief from the automatic stay.[6] The Court finds no legitimate reason why it should now vacate its Order, schedule a later rehearing, and then reenter judgment on the grounds of 11 U.S.C. § 362(d)(3) – a waste of judicial time and effort.

### III. CONCLUSION

In sum, the Court concludes that the Debtor has failed to show any basis for granting post-judgment relief under either Fed. R. Bank. P. 9023 or Rule 9024. The Debtor has failed to show that the Court's Order granting the Bank's motion for relief from stay to foreclose on the Debtor's real property was contrary to the weight of the evidence. Likewise, the Debtor's arguments that excusable neglect prohibited it from timely responding to the Bank's motion for relief from stay are not justified in the record before the Court, and even if the Court were to grant the Debtor relief from the Court's Order, the Debtor has not presented the Court with any meritorious defense to the Bank's motion. The Debtor has failed to demonstrate that the Bank's judgment in the underlying state court litigation was not final or that the Bank did not have a valid lien against the Debtor's real property executable against the Debtor. Based on the facts of this case, the Court properly granted the Bank relief from the automatic stay under 11 U.S.C. § 362(d) because the Bank's claim was secured in real estate and ninety days had elapsed since the petition date without the Debtor filing either a plan of reorganization with a reasonable possibility of confirmation or a request for an extension of time. This opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 17th day of August 2004.

---

[6] Perhaps the Debtor can still file a supersedeas bond pending the outcome of its state court appeal. The Debtor would then be able to accomplish what it has failed to do by filing bankruptcy – stay execution of the state court judgment.

                                Document      Page 10 of 10

                                              /s/ Jerry W. Venters
                                              United States Bankruptcy Judge

A copy of the foregoing will be mailed
electronically or conventionally to:
Lisa A. Epps
James C. Wirken
Sherri L. Wattenbarger